UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT ELDON-LEE BERRY,

          Petitioner,         Case No. 1:19-cv-652

v.                                    Honorable Paul L. Maloney

RANDEE REWERTS,

          Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Eldon-Lee Berry is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan. On August 8, 2016, Petitioner pleaded guilty in the Isabella County Circuit Court to one count of maintaining a methamphetamine laboratory in violation of Mich. Comp. Laws § 333.7401c; one count of possession of methamphetamine in violation of Mich. Comp. Laws § 333.7403; and one count of maintaining a drug house in violation of Mich. Comp. Laws § 333.7405. On September 13, 2016, the court sentenced Petitioner to concurrent prison terms of eight to twenty years for maintaining the lab, two to ten years for possession of methamphetamine, and sixteen months to two years for maintaining a drug house.

On August 7, 2019, Petitioner filed his habeas corpus petition raising one ground for relief, as follows: "The trial court erred in denying (Mr. Berry's) motion for resentencing where he should have been resentenced pursuant to *People v. Killebrew*, 416 Mich. 189 (1982), and where the trial court imposed a sentence which was based on erroneous information entitling (him) to resentencing." (Pet., ECF No. 1, PageID.6.)

Respondent has filed an answer to the petition (ECF No. 4) stating that it should be denied as meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the asserted ground lacks merit. Accordingly, I recommend that the petition be denied.

## Discussion

**I.    Factual allegations**

Petitioner claims he entered his guilty pleas pursuant to an agreement that he would receive a flat 54-month sentence. He contends the original agreement was for a 78-month sentence and then the prosecutor agreed to dismiss the felony firearm charge, which took off another 24 months.

Petitioner's present contentions are directly contrary to his sworn testimony at the plea hearing:

> THE COURT: Ms. Scully, can you tell us the plea agreement and whether or not there is any type of sentence agreement?
>
> MS. HUNT-SCULLY: Yes. The agreement is for Mr. Berry to plead to the three charges contained in the Amended Information. The original Information will be dismissed. We have a stipulation that the weapon that was seized shall be forfeited and there is no sentence agreement.

> THE COURT: What about the habitual?
>
> MS. HUNT-SCULLY: No habituals.
>
> THE COURT: All right. Ms. Winters, is that your understanding of the plea agreement?
>
> MS. DAY-WINTERS: That is, Your Honor. Thank you.
>
> THE COURT: And, sir, is that your understanding of the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor, it is.
>
> THE COURT: And do you understand there is no agreement regarding what your sentence could be?
>
> THE DEFENDANT: Yes, sir, I do.

(Plea Hr'g Tr., ECF No. 5-2, PageID.66-67.) Petitioner also agreed that, by entering his pleas, he would be giving up any claim that his pleas were the result of promises or threats not disclosed to the court. (*Id.*, PageID.69-70.) Moreover, at sentencing, Petitioner made no mention of the agreement to a 54-month sentence. In fact, he even acknowledged that the sentencing hearing was "not the time to barter a deal." (Sentencing Hr'g Tr., ECF No. 5-3, PageID.83.)

Despite his prior representations to the court, Petitioner filed a motion for resentencing claiming that he was promised a 54-month sentence. Petitioner did not want to withdraw his plea, he just wanted his sentence reduced to the shorter term. The court held a hearing. Petitioner testified. The court rejected Petitioner's argument and his testimony concluding that the hearing transcripts made clear that there was no sentence agreement. (Mot. Hr'g Tr., ECF No. 5-4, PageID.102.)

Petitioner, with the assistance of counsel, sought leave to appeal in the Michigan Court of Appeals. That court denied leave for lack of merit in the grounds presented by order entered February 8, 2018. (Mich. Ct. App. Order, ECF No. 5-5, PageID.105.) Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered July 27, 2018. (Mich. Order, ECF No. 5-6, PageID.155.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. Instead, he timely filed his habeas petition in this Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000);

4

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

5

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Breach of the plea agreement

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id*. at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

The Isabella County Circuit Court judge found that the plea bargain did not include any agreement with regard to the sentence. Implicit in that finding is a determination that Petitioner's testimony to the contrary is not credible.

The state court's factual determinations are presumed correct. Petitioner can only overcome the presumption with clear and convincing evidence. Petitioner has failed to meet his burden. Petitioner presents only the post-sentencing hearing motion transcript and his own affidavit. Petitioner's after-the-fact testimony, however, is flatly contradicted by his sworn testimony at the plea hearing as well as his conduct at the sentencing hearing.

The undersigned concludes that that Petitioner's testimony offered in support of his present position is neither clear nor convincing. Moreover, in light of Petitioner's testimony at the plea hearing, the state court's determination of the

terms of the plea agreement is reasonable on the record. Because the plea agreement does not include a sentence term, as Petitioner contends, the state appellate court's rejection of Petitioner's claim that the plea agreement was breached in neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on his claim that the prosecutor breached the plea agreement.

## IV.    Voluntary or unknowing plea

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find that a guilty plea is constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312

8

U.S. 329, 334 (1941). Petitioner does not contend he is incompetent, and Petitioner had adequate notice of the charges against him.

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Petitioner's claim that his plea was prompted by a promise of a 54-month sentence suggests that he is asserting that he did not understand the consequences of his plea.

The trial court's reasonable determination that there was no such promise precludes relief. Moreover, under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea

9

bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90.

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Even if Petitioner entered his plea hearing with a subjective misunderstanding that he was pleading in exchange for a sentence of 54 months, the plea colloquy disabused him of that notion. *See, e.g., United States v. Horne*, 313 F. App'x 788, 793 (6th Cir. 2008) ("Any mistaken belief Horne may have harbored as a result of

10

misleading information from his counsel at the time of entering the plea was remedied at the plea colloquy. During the plea colloquy, the district court clearly informed Horne of the conditions and consequences of his plea."); *United States v. Contreras-Armendariz*, 207 F. App'x 594, 596-97 (6th Cir. 2006) (where the court "reviewed the rights that Contreras was waiving, the factual and legal nature of the offenses with which he was charged, and the potential sentences he faced as a result of the guilty plea," the plea was knowing and voluntary despite Contreras' mistaken belief his criminal history category was lower than it was ultimately determined to be); *Adkins v. Lafler*, No. 4:06-CV-11562, 2006 WL 3759921 at *4 (E.D. Mich. December 20, 2006) (concluding that Petitioner's erroneous assumptions and mistaken beliefs were "insufficient to overcome the presumption of verity which attaches to Petitioner's statements during the plea colloquy . . . .").

For all of these reasons, the Michigan Court of Appeals rejection as meritless of Petitioner's suggestion that his plea may not have been voluntary is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## V. Accurate information at sentencing

Petitioner also challenges the sentence the trial court imposed because it was based on "erroneous information." (Pet., ECF No. 1, PageID.6.) Petitioner specifically objects to the trial court's determination of his sentence based on the content of telephone calls Petitioner made from the jail after his plea. Petitioner is correct that the court relied on those calls:

> But, I have to try to look at everything, the total picture. And I'll be candid with you, you know, these phone conversations hurt you. I don't know why you had to get on the phone. If you didn't get on the phone I wouldn't have had an opportunity to read all these phone calls, but the content is just horrific. Some of the stuff you're saying to the—well, I don't know who you were talking to, but you were talking about, you know, this Dawn Garrison and just—it's vile, you know. The stuff you said is just vile, really when you're talking about women in general and drugs.

(Sentencing Tr., ECF No. 5-3, PageID.85-86.)

Petitioner's first contention—that the court is not permitted under the state sentencing guidelines to rely on such information when imposing sentence because the information is not part of the charged crimes—is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' " *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.' " *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298,

301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner next contends that he was denied due process when the trial court relied on false information in setting his sentence. It is true that a sentence would violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980; *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

Although Petitioner states that the court relied on erroneous information, the statement is not accurate. He complains only that the Due Process Clause barred the trial court from relying on information unrelated to the crime of conviction and that the court misconstrued the meaning of what he said during the telephone calls.

To the extent that Petitioner argues that the trial court violated due process by considering facts unrelated to his crime of conviction, his argument is baseless. "[I]t is settled law that a trial judge in performing his sentencing function may appropriately consider any responsible information of a relevant nature, even though unsworn or derived from an out-of-court source," . . . including evidence of criminal charges for which the defendant may never have been tried. *Collins v. Buchkoe*, 493

13

F.2d 343, 345 (6th Cir. 1974) (citing *Williams v. Oklahoma*, 358 U.S. 576 (1959)). The United States Supreme Court has never held that due process is offended by a sentencing court's consideration of the type of evidence in issue here.

Moreover, to the extent that he suggests that the evidence provided by the calls was inaccurate, he wholly fails to support his claim. Petitioner does not dispute the actual content of the calls he made from the jail. Nor has he provided any basis for his assertion that the calls should have been interpreted differently. As a result, Petitioner wholly fails to overcome the presumption of correctness accorded the trial court's determination of the meaning of the calls. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429. Because Petitioner does not demonstrate that the information on which the sentencing court relied is inaccurate, he cannot show that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

For these reasons, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his sentencing challenge is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on his sentencing claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket

denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  May 7, 2020                      /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJCTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).